USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHNATHAN ZAMORA,

     Plaintiffs,

 -against-

OPEN DOOR FAMILY MEDICAL CENTER,
INC. and DOSOON MIN,

     Defendants.
-------------------------------------------------------------X

16-CV-00353 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

 Plaintiff Johnathan Zamora brings this action against his former employer, Open Door Family Medical Center, Inc. ("Open Door"), and his former supervisor, Dosoon Min, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290, et seq. ("Complaint," ECF No. 1.)

 Presently before the Court is Defendants' motion for summary judgment on each of Plaintiffs' claims. (Defs.' Mot. for Summ. J., ECF No. 44.) For the reasons that follow, Defendants' motion is DENIED.

## BACKGROUND

 The following facts are derived from the parties' respective Local Rule 56.1 statements, pleadings, and a review of the record.[1]

 Plaintiff was hired to work as a nutritionist in the WIC Department at Defendant Open Door Family Medical Center, Inc. ("Open Door") on August 12, 2006. (Pl's Resp. to Defs' Rule

---

[1] Where only one party's 56.1 Statement is cited, the factual statement is either undisputed or no admissible evidence has been offered to refute that fact.

56.1 Statement of Facts ("Pl.'s 56.1") ¶ 9, ECF No. 56.) For the duration of Plaintiff's employment with Defendant Open Door, he was the only male employee in the WIC department. (Compl. ¶ 8, ECF No. 1); (Def. Open Door Answer ¶ 8, ECF No. 14); (Def. Min Answer ¶ 8, ECF No. 19.) Plaintiff reported directly to Defendant Min during his employment. (Pl.'s 56.1 ¶ 10.)

On February 1, 2007, Defendant Min provided Plaintiff with a "Competency Assessment for WIC Nutritionists" and indicated that Plaintiff was proficient in each skillset on the form. (Pl.'s 56.1 ¶ 18.) On March 26, 2007, Plaintiff received Defendant Min's appraisal of his performance which included a note that Plaintiff "has to improve his attendance" and "[a]fter a few warnings, he is improving very much in this area."[2] (Defs' 56.1 ¶ 20); (Decl. of Lauren Hanson in Supp. of Defs.' Mot. for Summ. J. ("Hanson Decl") Ex. E (Pl. Dep. Tr. 52:23–25, 53:13–25), Ex. M, ECF No. 45).) During the first year of his employment, Plaintiff complained to Director of Human Resources Nancy Rodriguez because he believed Defendant Min was

---

[2] Plaintiff argues that Defendant Open Door's performance appraisals are inadmissible hearsay lacking a foundation in "testimony from a knowledgeable person as to why a particular performance evaluation was given." (Pl.'s 56.1 ¶ 20.) However, Open Door performance appraisals fall within the business records exception to hearsay, which states that records of a regularly conducted activity are not excluded as hearsay if (1) the record was made near in time by someone with knowledge, (2) the record was kept in the course of a regularly conducted business activity, (3) the making of the record was a regular practice, (4) the aforementioned conditions are shown by testimony of the custodian or another qualified witness, or by certification, and (5) the opponent does not show that the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. Fed. R. Evid. 803(6). In her deposition, Nancy Rodriguez, Director of Human Resources and responsible for making sure performance appraisals were completed, stated that department heads, which includes Defendant Min, were required to conduct performance appraisals of their employees in approximately February or March to review their performance for the previous year; until 2013, these reviews occurred every three years and after 2013, they occurred annually and included new points ratings to recognize accomplishment and flag "needs improvement." (Hanson Decl. Ex. A (Rodriguez Dep. Tr. 84:6–85:22)); (Compl. ¶ 18.) Defendant Min, as the head of Plaintiff's department, created his performance appraisal, which was kept in the course of regularly conducted business and part of regular, company-wide practice. (Hanson Decl. Ex A. (Rodriguez Dep. Tr. 84:15–25, 85:1–22), Ex. M); (Compl. ¶ 6.) Beyond stating that the record contains disputed fact, Plaintiff does not show that the source of the information or the method or circumstances of preparation of the record indicate lack of trustworthiness. (Pl.'s 56.1 ¶ 20.) Therefore, the performance appraisal is admissible.

discriminating against him based on his gender. (Pl.'s 56.1 ¶¶ 22–23.) Plaintiff informed Ms. Rodriguez that Defendant Min told him about "a relative of hers in Korea who wanted a son and had his wife abort nine pregnancies because they were girls, and the lesson was he obtained his goal . . . . [I]t was a story told to [Plaintiff about] behavior [he] should emulate in achieving his goals." (*Id.* ¶ 24.) Ms. Rodriguez concluded that Defendant Min did not engage in gender discrimination. (*Id.* ¶ 25.)

Plaintiff resigned from Defendant Open Door on February 29, 2008 to accept a position with another company and, based on Defendant Min's advice, wrote a complementary resignation letter in order to leave Defendant Open Door on good terms. (*Id.* ¶¶ 27–28); (Pl. Aff. ¶ 8, ECF No. 50.) Plaintiff returned to his previous position as a nutritionist at Defendant Open Door in June 2008 after being interviewed by Defendant Min. (Pl.'s 56.1 ¶ 29–32.) Defendant Min promoted Plaintiff to Assistant Director, a newly created position, in January 2010. (*Id.* ¶ 31.) Gina DeVito, another WIC nutritionist, had also expressed interest in the Assistant Director position. (Defs.' 56.1 ¶ 34); (Hanson Decl. Ex. E (Pl. Dep. Tr. 90:6–14).) In a performance appraisal, dated May 20, 2010, Defendant Min again noted that Plaintiff needed "to improve on his absenteeism without advance notification."[3] (Defs.' 56.1 ¶ 36.) Plaintiff states that repeatedly during his employment, Defendant Min told him that he should "be a man and think about [his] family and children."[4] (Hanson Decl. Ex. E (Pl. Dep. 121:20–25, 122:1–8)); (Defs.'

---

[3] See discussion of the business records hearsay exception and Ms .Rodriguez's testimony, *surpa* n.2. Defendant Min, as the head of Plaintiff's department, created his performance appraisal, which was kept in the course of regularly conducted business and part of regular, company-wide practice. (Hanson Decl. Ex. A (Rodriguez Dep. Tr. 84:15–85:22), Ex. Q); (Compl. ¶ 6.) Beyond stating that the record contains disputed fact, Plaintiff does not show that the source of the information or the method or circumstances of preparation of the record indicate lack of trustworthiness. (Pl.'s 56.1 ¶ 36.) Therefore, the performance appraisal is admissible.

[4] Defendant Min denies making this statement. (Hanson Decl. Ex. C (Min Dep. Tr. 204:23–25, 205:1–6).)

3

56.1 ¶ 45.)

On November 18, 2013, Defendants removed Plaintiff from the Assistant Director position and was assigned to the role of a WIC nutritionist, responsible for coordinating outreach which included the "[a]dditional responsibility of performing outreach functions and setting up outreach events." (Defs.' 56.1 ¶¶ 55, 57); (Hanson Decl. Ex. E (Pl. Dep. Tr. 138:9–25, 139:1–12)); (Pl.'s 56.1 ¶¶ 51–52.) His salary was not reduced. (Pl.'s 56.1 ¶ 56.)

Beginning in 2013, Defendant Open Door modified its performance appraisal process and, if an employee received an overall performance rating of "needs improvement," they were required to successfully complete a performance improvement plan ("PIP"). (*Id.* ¶¶ 59, 61.) Under this new system, supervisors recommended an overall performance rating for each of their direct reports which was subject to approval by the next level management, with additional feedback from Human Resources. (*Id.* ¶ 64.) Defendant Min and Anita Wilenkin, Defendant Open Door's Chief Operating Officer, discussed Plaintiff's performance appraisal for 2013 to determine whether Plaintiff should receive a raise, and, as of May 2, 2014, Plaintiff was not scheduled to receive a raise because, according to Defendants, his 2013 performance appraisal was negative;[5] but Plaintiff was not provided with this information until after May 14, 2014. (Hanson Decl. Ex. AA); (Decl. of Peter Schuyler in Opp'n to Defs.' Mot. for Summ. J. ("Schuyler Decl.") Ex. 3 (Wilenkin Dep. Tr. 97:16–24), ECF No. 55); (Pl.'s 56.1 ¶ 127.)

On May 14, 2014, Plaintiff again complained to Ms. Rodriguez about Defendant Min,

---

[5] See discussion of the business records hearsay exception, *surpa* n.2. Defendants imply that Ms. Rodriguez, who was, until July 28, 2014, responsible for overseeing the whole Human Resources department, authenticated the email and attachment from Anita Wilenkin, sent to Human Resources employees. (Rodriguez Aff. ¶ 9, ECF No. 47); (Schuyler Decl. Ex. 1 (Rodriguez Dep. Tr. 7:19)); (Shelton Dep. Tr. 9:3–7.) The document is properly authenticated by Ms. Wilenkin, who testified that the regular procedure for conducting performance appraisals required supervisors, including Defendant Min as Plaintiff's supervisor, to make the rating decision and discuss it with Ms. Wilenkin so that she could properly determine salary adjustments. (Schuyler Decl. Ex. 3 (Wilenkin Dep. Tr. 74:23–25, 75:1–25).) The email attachment contains those salary adjustments.

4

and Plaintiff states that he also complained about discrimination directly to Defendant Min and her supervisor. (Defs.' 56.1 ¶ 66); (Pl. Aff. ¶ 14.) Plaintiff informed Ms. Rodriquez that Defendant Min was discriminating against him based on his gender. (Defs.' 56.1 ¶ 67); (Pl. Aff. ¶ 14.) Plaintiff reported that, in early 2014 after Plaintiff returned from vacation, Defendant Min told him that "men shouldn't take vacations, they should let women stay home and raise the children," and Defendant Min denies making this statement. (Pl.'s 56.1 ¶ 68); (Defs.' 56.1 ¶ 69); (Hanson Decl. Ex. C (Min Dep. Tr. 207:19–24).) Plaintiff also informed Ms. Rodriguez that Defendant Min made a disparaging comment about his weight gain in early 2014 and that he was written up in April 2014 for taking approved time off. (Pl.'s 56.1 ¶¶ 70–71.) Additionally, Plaintiff reported that Defendant Min told him she was going to assign his outreach coordinator role to someone "who was more capable because Plaintiff did not understand what the WIC Department was trying to accomplish with outreach." (*Id.* ¶ 72.) Plaintiff's April 2014 write-up for taking time off was removed from Plaintiff's personnel file. (*Id.* ¶ 75.) Parties dispute whether Plaintiff was ever informed that Ms. Rodriguez concluded that Plaintiff's gender discrimination complaint was unfounded. (Defs' 56.1 ¶ 76); (Pl's 56.1 ¶ 76.)

Defendant Min and Ms. Wilenkin met with Plaintiff on June 2, 2014 to discuss his 2013 performance appraisal, which rated his overall performance as "needs improvement." (Defs.' 56.1 ¶ 79); (Hanson Decl. Ex. Y.) Months later, on August 25, Defendant Min provided Plaintiff with a copy of his 90 day PIP, dated June 3, 2014. (Pl's 56.1 ¶ 83); (Defs.' 56.1 ¶ 83); (Hanson Decl. Ex. FF.) The PIP provided that, "effective immediately," Plaintiff was "expected to make regular progress on addressing performance issues" and that "if there is no significant improvement . . . [Plaintiff's] employment may be terminated prior to 90 days." It also described Plaintiff's absences and outreach performance during the PIP period. (Pl.'s 56.1 ¶ 84); (Defs.'

56.1 ¶¶ 86–87); (Hanson Decl. Ex. FF.) In Plaintiff's reply to the PIP, he explained that some of his absences were supported by medical documentation and that, during the summer months, there are fewer outreach opportunities. (Pl.'s 56.1 ¶ 89.) Defendants state that Plaintiff's PIP did not go into effect until August 25, 2014, but Plaintiff notes that the PIP documents Plaintiff's absenteeism and outreach performance starting June 3, 2014, the date listed at the top of the PIP. (Pl's 56.1 ¶ 90); (Defs.' 56.1 ¶ 90); (Hanson Decl. Ex. FF.) On September 22, 2014, Defendant Open Door informed Plaintiff that his PIP was being extended by 60 days, but Plaintiff notes that he did not receive his original PIP until less than one week before it expired, on September 1, 2014. (Pl.'s 56.1 ¶ 91); (Defs.' 56.1 ¶ 91); (Hanson Decl. Ex. FF.) This new PIP, or PIP extension, required Plaintiff to enroll fifty new outreach participants into the WIC program, a goal Plaintiff states is unattainable. (Pl.'s 56.1 ¶ 94); (Defs.' 56.1 ¶¶ 94.) Plaintiff objected to the PIP extension by submitting in writing that he had satisfied all of the criteria for the first PIP and that the "fact that [Plaintiff] was placed on a 90 day improvement plan mere days after reporting to Human Resources a claim of discrimination within [his] department only raises questions and arouses suspicion of the program director's motives and senior management involvement in the mishandling of the situation." (Pl.'s 56.1 ¶¶ 98–99.)

As of November 17, 2014, Defendant states that Plaintiff had not held a new outreach event and had not demonstrated that he had enrolled fifty new WIC participants through outreach, but Plaintiff states that he held outreach events in October 2014. (Defs.' 56.1 ¶ 107); (Pl's 56.1 ¶ 107); (Schuyler Decl. Ex. 14.) Defendant Open Door terminated Plaintiff on November 19, 2014 for his "continued inability to meet his outreach goals following his 90-day PIP and 60-day extension." (Defs.' 56.1 ¶ 108); (Pl.'s 56.1 ¶ 108.) Defendant Min provided the Human Resources Department with the information for the advertisement for Plaintiff's former

position, which included a goal to enroll approximately eighty seven new participants into the WIC program during 2015. (Pl.'s 56.1 ¶ 115.)

On or about December 17, 2014, Plaintiff filed a discrimination charge with the EEOC, alleging sex discrimination and retaliation, and the EEOC issued a Notice of Right to Sue on October 19, 2015. (*Id.* ¶¶ 120–21.) Plaintiff commenced this action on January 15, 2016. (*Id.* ¶ 122.) Defendant Open Door filed an answer on March 29, 2016, and Defendant Min filed an answer on April 11, 2016. After discovery was completed, Defendants Open Door and Min together moved for summary judgment on all of Plaintiff's claims on October 10, 2017.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013).

A court should grant summary judgment when a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal

quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## DISCUSSION

Defendants argue that they are entitled to summary judgment for Plaintiff's sex discrimination and retaliation claims under Title VII and New York Executive Law § 290 ("NYHRL"). The Second Circuit has held that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997); *see Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Salomon v. Our Lady of Victory Hosp.*, 514 F3d 217, 226 n.9 (2d Cir. 2008). "One notable exception to this rule is that, while an individual defendant with supervisory control may not be held personally liable under Title VII, an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he 'actually participates in the conduct giving rise to the discrimination claim.'" *Rojas*, 660 F.3d at 107 n.10.

Accordingly, the Court will address Plaintiff's Title VII and NYHRL claims together, except for Plaintiff's NYHRL claim against Defendant Min in her individual capacity.

I. Sex Discrimination

Defendants argue that Plaintiff cannot establish a prima facie case of sex discrimination. (Defs.' Mot for Sum. J. pp. 4–19.)

8

Where there is "no direct or overt evidence of discriminatory conduct, we apply the three-part burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 802–04 (1973) to determine whether summary judgement is appropriate." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Under *McDonnell Douglas*, a plaintiff must establish (1) she is a member of a protected class; (2) she is qualified for her position; (3) she was subjected to an adverse employment action; and (4) the circumstances give rise to an interference of discrimination. *Weinstock*, 224 F.3d at 42. "[T]he level of proof a plaintiff is required to present in order to establish a *prima facie* case of discrimination is low." *De la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996). If the plaintiff establishes a prima facie case, the defendant may rebut the case by establishing a legitimate, non-discriminatory reason for the adverse employment action and, if the defendant establishes a legitimate reason, the presumption of discrimination from the establishment of a prima facie case drops out. *Weinstock*, 224 F.3d at 42. For the claim to continue, the plaintiff must come forward with evidence that the defendant's proffered non-discriminatory reason is mere pretext for discrimination. "The plaintiff must produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Id.* (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks omitted)).

In the present action, Plaintiff has proffered sufficient admissible evidence from which a reasonable trier of fact could find that Defendants engaged in gender discrimination. Plaintiff establishes, and Defendants do not dispute, that he is a member of a protected class, was qualified for his position, and that his termination qualified as an adverse employment action.

(Pl.'s 56.1 ¶ 18); (Defs.' Mot. for Summ. J. p. 5.)

Additionally, Plaintiff presents sufficient evidence to establish that there is a genuine issue of material fact that his termination occurred under circumstances giving rise to the inference of sex discrimination. Plaintiff testified that he was treated differently than his female colleagues for taking his allotted days off of work, endured sexist comments, and was subjected to improper PIP procedures which ultimately lead to his termination. (Hanson Decl. ¶ Ex. E (Pl. Dep. Tr. 121:20–25, 122:1–8, 158:2–7, 207: 6–22); (Pl. Aff. ¶¶ 14, 25.) In support of his contention, Plaintiff asserts in a sworn statement that Defendant Min allowed a woman, a nutritionist, in the WIC department to adjust her schedule so that she could attend graduate classes but denied Plaintiff's request that he be allowed to modify his schedule so that he could take night classes.[6] (Pl's 56.1 ¶¶ 138–39) (Pl. Aff. ¶ 12.) Defendant Min confirmed this in her deposition. (Schuyler Decl. Ex. 4 (Min. Dep. Tr. 206:1–9, 18–24).) Plaintiff testifies that Defendant Min made several sexist comments to him and cites specific comments from the end of 2012 and beginning of 2014, but Defendant Min denied that she made these statements in her sworn testimony.[7] (Hanson Decl. Ex. C (Min Dep. Tr. 204:23–25, 207:19–24), Ex. E (Pl. Dep. 121:20–25, 122:1–8, 158:2–7).) This alleged discrimination came to a head when Defendants misapplied their PIP procedure and set an unreasonable goal for Plaintiff, a male, that no other nutritionists, who are all female, were expected to meet, resulting in his termination. (*See infra.*) A reasonable fact finder could find that Plaintiff met the low standard of proof for a prima facie discrimination case. *See De la Cruz*, 82 F.3d at 20.

---

[6] Plaintiff does not specify a time for this incident. (*See* Pl. Aff. ¶ 12.)

[7] Defendant Min allegedly told Plaintiff to "be a man" around November 2012 (Defs.' 56.1 ¶¶ 41–45) and that men should not take vacations in early 2014. (Pl.'s 56.1 ¶ 68); (Defs.' 56.1 ¶ 69); (Hanson Decl. Ex. C (Min Dep. Tr. 207:19–24).)

10

Though Defendant offers a legitimate, nondiscriminatory reason for Plaintiff's termination—his failure to meet the standards set in his extended PIP (Defs.' 56.1 ¶ 108), there is a question of fact whether the basis for Plaintiff's termination was a pretext.

However, Plaintiff presents evidence that a reasonable factfinder could determine shows that the Defendants' proffered nondiscriminatory reason is mere pretext. Plaintiff testified that he was subjected to an unfair PIP proceeding as a pretext to terminate him for gender discrimination. (Pl. Aff. ¶¶ 16–20, 24–25.) Plaintiff was presented with his first, ninety day PIP on August 25, 2014, even though that PIP was created on June 3, 2014 and was set to expire on September 1, 2014. (Hanson Decl. Ex. FF); (Zamora Aff. ¶ 17.) Defendant Min testified that she provided Plaintiff with a sixty day extension on his PIP on September 22, 2014, but Plaintiff presents evidence that this extension was actually a second PIP, imposed twenty-one days after the first PIP had expired, and that the goal he was required to meet in this PIP was unattainable. (Schuyler Decl. Ex. 4 (Min Dep. Tr. 192:14–16)); (Hanson Decl. Ex. FF); (Pl. Aff. ¶¶ 20–22.) This PIP required Plaintiff to enroll fifty new WIC program participants in sixty days (or twenty-five per month), and Defendant Min and Ms. Wilenkin each admitted that they could not identify any instances where Open Door received twenty-five new participants in one month through outreach programs. (Schuyler Decl. Ex. 4 (Min Dep. Tr. 189:12–15), Ex. 3 (Wilenkin Dep. Tr. 153:21–25).) While Defendants assert that Plaintiff held no outreach events during this second PIP period, indicative of underperformance, Plaintiff presented evidence that he held events in October, including a schedule of October outreach events. (Defs.' 56.1 ¶ 107); (Schuyler Decl ¶ 17, Ex. 14); (Pl. Aff. ¶ 21.) Moreover, Plaintiff was terminated on November 19, 2014, before the end date of his second PIP which was scheduled to end sixty days from September 22, 2014. (Defs.' 56.1 ¶¶ 91, 108); (Hanson Decl. Ex. GG.) Before Plaintiff was terminated, Defendant

Open Door posted an advertisement for Plaintiff's position on October 23, 2014, well ahead of the expiration of his second PIP. (Schuyler Decl. Ex. 4 (Shelton Dep. Tr. 40:3–20), Ex. 19).) This advertisement stated that the new employee would be responsible for enrolling eighty-seven new WIC participants over twelve months, a significantly more generous goal than Plaintiff was required to meet in his second PIP. (Schuyler Decl. Ex. 19.) A reasonable factfinder could review this evidence and determine that Defendants' stated reason for terminating Plaintiff, Plaintiff's alleged failure to meet the goal in the second PIP, was mere pretext for his termination, thus raising a genuine and material issue of fact.

Accordingly, Defendants' motion for summary judgment on Plaintiffs NYSHRL and Title VII sex discrimination claims must be denied.

## II. Retaliation

Defendants argue that Plaintiff cannot establish a prima facie case for retaliation or provide evidence that he was terminated "but for" his complaint to Human Resources on May 14, 2014.

To state a prima facie case for retaliation, a Plaintiff must allege that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Kessler v. Westchester Dep't of Soc. Serv.*, 461 F.3d 199, 205–06, 207–10 (2d Cir. 2006)). The governing standard is an objective one: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (internal quotation marks

omitted).

A plaintiff may establish causal connection directly, through evidence of retaliatory animus, or indirectly, by demonstrating close temporal proximity between the protected activity and the adverse action. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). The Supreme Court has noted that when courts accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case, "the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). However, the Second Circuit has not established a specific delay that defeats an inference of causation. *Gorman–Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554–55 (2d Cir. 2001) (listing cases in the context of Title VII retaliation).

Here, Plaintiff presents sufficient evidence to raise a genuine and material issue of fact such that a reasonable trier of fact could find that Defendants retaliated against Plaintiff. First, Plaintiff engaged in a protected activity when he reported to Ms. Rodriguez that Defendant Min was discriminating against him on the basis of his gender, and Defendant was aware of this activity. (Pl. Aff. ¶ 14); (Hanson Decl., Ex. A (Rodriguez Dep. Tr. 107:24–25).) Parties do not dispute that Plaintiff endured a materially adverse employment action, termination. (Defs.' Mot. for Summ. J. p. 6.) Additionally, Plaintiff's poor 2013 performance appraisal is also a materially adverse employment action particularly because that performance appraisal led to the implementation of the PIP procedure and his termination in November for failure to meet his PIP goals. *See Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 92 (2d Cir. 2015) ("[A] poor performance evaluation could very well deter a reasonable worker from complaining."). *But see Johnson v. Frank*, 828 F. Supp. 1143, 1153 (S.D.N.Y. 1993) ("Since the ... evaluation did not

affect the terms, privileges, duration or condition of. employment and there is no evidence to the contrary, the retaliation complaint should be dismissed.").

Next, there must be evidence to support a causal connection between Plaintiff's complaint to Human Resources and his 2013 "needs improvement" performance appraisal or his termination. Defendants argue that Defendant Min and Ms. Wilenkin rated Plaintiff's 2013 job performance as "needs improvement" as of May 2, 2014. (Defs.' 56.1 ¶ 65.) To support this claim, Defendants present an email dated May 2, 2014 between Ms. Wilenkin and Human Resources representatives with information about merit-based employee raises for the coming year which shows that Plaintiff was not to receive a raise. (Hanson Decl. Ex. AA); (Schuyler Decl. Ex. 3 (Wilenkin Dep. Tr. 97:16–24).) However, this document does not actually indicate that Plaintiff received a "needs improvement" rating on May 2, 2014. There is a "PI" next to Plaintiff's name under the "rating" column and reasonable factfinders could, when comparing the "PI" to "meets" next to other names, determine that PI stands for some variation of "needs improvement," but they could also find that the meaning of "PI" is difficult to determine without more context or explanation. There are no notes provided next to Plaintiff's name, but there are notes for other employees in the chart. (Hanson Decl. Ex. AA.) Additionally, the cover email for the chart suggests that it is not finalized, as it appears that Ms. Wilenkin needed to speak with someone else about the chart: "I think this is my version which I will need to get discuss with Lindsay." (*Id.*) According to Plaintiff, he did not meet with Defendant Min or Ms. Wilenkin to discuss his 2013 performance appraisal until June 2, 2014. (Pl. Aff. ¶ 16.) Additionally, this appraisal is dated June 3, 2014, not May 2. (Hanson Decl. Ex. FF.) A reasonable factfinder could determine that Defendants did not assign Plaintiff a "needs improvement" rating until after his May 14, 2014 meeting with Human Resources, and that there is a causal connection between

the adverse action and Plaintiff's protected activity. Assuming Defendants did not assign Plaintiff's rating until June 3, 2014, Plaintiff received his negative performance rating less than one month after his protected activity which is sufficient to establish temporal proximity. *See Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002) (holding that one month between protected activity and the adverse employment action was sufficient to establish temporal proximity); *Feliciano v. City of New York*, 14-CV-6751(PAE), 2015 WL 4393163, at *10 (S.D.N.Y., July 15, 2015) ("[W]here no additional facts are pled, temporal proximity ordinarily requires that the allegedly retaliatory act occur within two months of the plaintiff's protected activity.").

Additionally, as discussed *supra* in relation to Plaintiff's discrimination claim, a reasonable factfinder could conclude that Defendants' reason for Plaintiff's termination was mere pretext, making retaliation the but for cause of Plaintiff's termination.

Defendants' motion for summary judgment on Plaintiff's Title VII and NYSHRL retaliation claims is denied.

### III. Aiding and Abetting

"Notably, the NYSHRL makes it unlawful for an *employer* to discriminate." *Colon v. Mark-Viverito*, No. 16-CV-4540 (VSB), 2018 WL 1565635, at *9 (S.D.N.Y. Mar. 26, 2018) (internal quotation marks omitted). Nevertheless, the NYSHRL also allows for "[i]ndividuals who are not a plaintiff's employer to be held liable for aiding and abetting discriminatory or retaliatory conduct." *Hughes v. Twenty-First Century Fox, Inc.*, No. 17-CV-7093, 2018 WL 1940175, at *14 (S.D.N.Y. Apr. 24, 2018); *see also* N.Y. Exec. Law § 296(6) ("It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of

any of the acts forbidden under this article, or to attempt to do so.").

The only argument Defendants advance in favor of granting summary judgment and dismissing Plaintiff's aiding and abetting claim is that Defendant Min cannot be held liable as an aider or abettor without any underlying liability on behalf of Defendant Open Door for discrimination and retaliation under the NYSHRL. (Defs.' Mot. for Summ. J. ¶¶ 23–24.) Defendants' arguments, however, are unavailing given that NYSHRL claims for discrimination and retaliation remain against Defendant Open Door. Because Defendants do not present any other argument in favor of summary judgment on Plaintiff's aiding and abetting claims, Defendants' motion is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion is DENIED. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 44. The parties are directed to appear before this honorable Court on October 12, 2018 at 11:00 a.m. for a pretrial conference.

Dated: September 28, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge